## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

**HUMANTECH, INC.,**

                Plaintiff,

                                        No. 14-CV-12141

v.                                  Hon. Gerald E. Rosen

**ERGONOMICS PLUC, INC.,**

                Defendant.

_____/

## OPINION AND ORDER REGARDING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION

### I. INTRODUCTION

This copyright infringement and trade secret action is currently before the court on Defendant's motion to dismiss the case for lack of personal jurisdiction, pursuant to Fed. R. Civ. P. 12(b)(2).  The case, which arises out of Defendant's alleged unlawful reproduction of Plaintiff's copyrighted ergonomics documents, presents an interesting and difficult question regarding the extent of "minimum contacts," in both internet and tortious activity contexts, that is necessary to give rise to specific jurisdiction over an out-of-state defendant.

### II. PERTINENT FACTS

1

Plaintiff Humantech, Inc., is a Michigan Corporation with its principal place of business in Ann Arbor, Michigan.  Pl.'s Compl., Dkt. # 1, ¶ 3.  Plaintiff operates in the field of ergonomics -- the "scientific discipline concerned with the understanding of interactions among humans and other elements of a system." *Definition and Domains of Ergonomics*, International Ergonomics Association, http://www.iea.cc/whats/index.html (last visited February 19, 2015).  Plaintiff specializes in ergonomics "engineering, training, and consulting," and provides these services to a number of corporate clients.  *Client List By Industry*, Humantech,   http://www.humantech.com/about/clients/industry   (last   visited February 19, 2015).  Many of Plaintiff's services draw on its portfolio of intellectual property.  Plaintiff owns copyrights for various "manuals, surveys, guidelines, images, and other works in the field of ergonomic risk assessment and workplace improvement," Pl.'s Compl. ¶ 8, and, via its website, it provides training courses based on these materials and sells licenses to some of them, *id.* ¶ 10; *see Ergonomics Products*, Humantech, http://www.humantech.com/products (last visited February 19, 2015).

Defendant Ergonomics Plus, Inc., is an Indiana corporation, with its principal place of business in Grant County, Indiana.  Pl.'s Compl. ¶ 4.  Like Plaintiff, Defendant provides ergonomic consulting services to its clients, focusing on "preventing [injures in the workplace] and improving human performance for

2

local companies." Ergonomics Plus Website Screenshot, Dkt. # 10-2 (last visited June 17, 2011). Defendant's business primarily focuses on "integrat[ing] . . . injury prevention specialists . . . directly into [the] workplace to drive down . . . risk factors and build a safety culture." *Services*, Ergonomics Plus, http://ergo-plus.com/services/ (last visited February 19, 2015).

Like Plaintiff, Defendant makes available on its website a number of informational electronic materials related to ergonomics, including guides, handouts, webinars, and a blog. *Resources*, Ergonomics Plus, http://ergo-plus.com/resources/ (last visited February 19, 2015); *see also* Ergonomics Plus Website Screenshot, Dkt. # 10-2 (last visited June 17, 2011). Defendant also allows visitors of its website to sign up for a free consultation by entering an email address. *See id.* No products are available for purchase on Defendant's website, nor is there any indication in the record that they ever were in the past. *See id.* As of 2011, Defendant "offer[ed] services" in 10 states, including Michigan. Ergonomics Plus Website Screenshot, Dkt. # 10-2 (last visited June 17, 2011).[1] No evidence in the record, however, suggests that Defendant has any physical, financial, or other corporate presence in Michigan aside from the presence of some Michigan clients and its contacts with Plaintiff.

---

[1] A later screenshot, taken in 2013, stated that Defendant is a "nationwide consultancy, helping thousands of people across the United States remain healthy and productive at work every day." Ergonomics Plus Website Screenshot, Dkt. # 10-2 (last visited Dec. 22, 2013).

3

The events leading to this litigation began in April 2013, when "[Plaintiff] discovered that [Defendant] had posted blogs on its website . . . through which visitors could view and download a . . . lifting guidelines calculator that was very similar in layout and appearance to, and which performed the same function as, [Plaintiff's] . . . Composite Lifting Guidelines calculator.  Decl. of James Good, Dkt. # 10-3, ¶ 3.[2]  According to Plaintiff's complaint, the calculator posted on Defendant's website contained metadata identifying one of Plaintiff's employees who had aided in the creation of Plaintiff's calculator.[3]  Pl.'s Compl. ¶ 20.  Around the same time, Plaintiff also allegedly discovered that Defendant "improperly replicated [Plaintiff's] design guidelines," which are available on Plaintiff's website, and replicated several other copyrighted materials owned by Plaintiff.  *Id.* ¶¶ 23-29.

Through the declaration of its President, James Good, Plaintiff asserts several contacts between Plaintiff and Defendant that Plaintiff believes led to the unlawful copying of its intellectual property.  First, Defendant purchased an "Applied Industrial Ergonomics" manual from Plaintiff on July 9, 2010.  Decl. of

---

[2] As Plaintiff describes in its complaint, a lifting guidelines calculator is a "tool[] used to calculate guidelines for manual material handling tasks" that allows a user to "select from different criteria for defining lifting capacity and calculating risk" through the use of an interactive form.  Pl.'s Compl. ¶ 14.

[3] Plaintiff's complaint contains several other assertions implying that Defendant had copied Plaintiff's calculator, but those details are not relevant to the jurisdictional question addressed in this opinion.  *See* Pl.'s Compl. ¶¶ 18-22.

4

James Good ¶¶ 9-10.  An invoice for that purchase displays Plaintiff's Ann Arbor, Michigan, address as Plaintiff's business address.  *See id.*, Ex. A.  As part of that purchase Defendant received a compact disc containing Plaintiff's Composite Lifting Guidelines calculator.  *Id.* ¶ 10.[4]  Defendant's employees also attended various online webinars put on by plaintiff between July 2010 and April 2013.  *Id.* ¶¶ 11-12.

In response to Defendant's alleged conduct, Plaintiff sent a cease and desist letter to Defendant on April 26, 2013.  *Id.* ¶ 6.  The parties discussed the matter over the next several months, and while they "were unable to fully resolve the issues between them," Plaintiff was apparently satisfied that the offending material had been removed from Defendant's website until April 2014, when Plaintiff again discovered the allegedly copied lifting guidelines calculator on Defendant's website.  *Id.* ¶¶ 6-8.  Plaintiff sent a second cease and desist letter on April 3, 2014, but discussions were less fruitful this time, and Plaintiff commenced this suit on May 30, 2014.  *See id.*; *see generally* Pl.'s Compl.

Plaintiff's complaint asserts three claims for relief: (1) copyright infringement in violation of 17 U.S.C. § 101 *et seq.*, (2) violation of the Digital

---

[4] Plaintiff's complaint also notes a second avenue through which Defendant could potentially have obtained the calculator.  It states that the calculator was "obtain[able] through the State of Michigan, Department of Labor and Economic Growth website, for an unknown period of time.  Humantech was unaware, and did not authorize the posting, of its calculators on this website."  Pl.'s Compl. ¶ 16.

Millennium Copyright Act of 1998, 17 U.S.C. § 1201 *et seq.*, and (3) violation of the Michigan Uniform Trade Secrets Act, M.C.L. § 445.1901 *et seq.* Pl.'s Compl. ¶¶ 30-55. On July 29, 2014, Defendant filed the instant motion, asserting that the Court lacks personal jurisdiction over it due to its lack of contacts with Michigan, the forum state. Dkt. # 6.

## III. DISCUSSION

### A.   Rule 12(b)(2) Standard

On a motion to dismiss for lack of personal jurisdiction pursuant to Fed. R. Civ. P. 12(b)(2), Plaintiff has the burden of establishing that the exercise of jurisdiction over the defendant is proper. *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 887 (6th Cir. 2002). Where, as here, there has been no evidentiary hearing regarding personal jurisdiction, a plaintiff "need only make a prima facie showing of jurisdiction." *Id.* (quoting *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996)) (internal quotation marks omitted). However, it is insufficient for a plaintiff to merely reassert the allegations contained in its pleadings. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). The plaintiff must articulate specific facts to show that the court has jurisdiction. *Id.* The court must then consider all of the facts presented in the pleadings and affidavits in a light most favorable to the plaintiff, and does not weigh any contrary

6

assertions offered by the defendant. *Intera Corp. v. Henderson*, 428 F.3d 605, 614 (6th Cir. 2005). "Courts have three options when faced with motions under Federal Rule of Civil Procedure 12(b)(2): '(1) determine the motion[] based on affidavits alone; (2) permit discovery, which would aid in resolution of the motion; or (3) conduct an evidentiary hearing on the merits of the motion.'" *Murtech Energy Servs., LLC v. ComEnCo Sys., Inc.*, No. 2:13-CV-12721, 2014 WL 2863745, at *8 (E.D. Mich. June 24, 2014) (alteration in original).

Plaintiff in this case asserts both a federal question and diversity of citizenship as a basis for subject matter jurisdiction in this case. Pl.'s Compl. ¶ 5. Though it does not affect the ultimate outcome here, the Court notes that the basis for subject matter jurisdiction affects the personal jurisdiction analysis.

A federal court sitting in diversity jurisdiction is limited in its exercise of personal jurisdiction by (1) the long-arm statute of the state in which the federal court sits and (2) the Due Process Clause of the Fourteenth Amendment. *See Neogen* 282 F.3d at 888. A federal court that has subject matter jurisdiction on the basis of a federal question, however, is not always so limited. In such cases where the federal law at issue contains a nationwide service of process provision, a court need only consider the Fourteenth Amendment's due process limitations, as the nationwide service of process provision "confer[s] personal jurisdiction in any federal district court over any defendant with minimum contacts to the United

7

States." *Med. Mut. of Ohio v. deSoto*, 245 F.3d 561, 567 (6th Cir. 2001) (quoting

*United Liberty Lobby Life Ins. Co. v. Ryan*, 985 F.2d 1320, 1330 (6th Cir. 1993)).[5]

In this case, neither of the two laws giving rise to federal question

jurisdiction -- the Copyright Act of 1976, 17 U.S.C. § 101 *et seq.*, and the Digital

Millennium Copyright Act of 1998, 17 U.S.C. § 1201 *et seq.* -- contains a

nationwide service of process provision.  In federal question cases where the law at

issue does not contain a nationwide service of process provision, the court must

follow Rule 4(k) of the Federal Rules of Civil Procedure, which "limits a court's

exercise of personal jurisdiction to persons who can be reached by the forum

state's long-arm statute." *Alisoglu v. Cent. States Thermo King of Oklahoma, Inc.*,

---

[5] The Sixth Circuit has articulated why this must be the case:

> [T]he personal jurisdiction requirement restricts judicial power as a matter of individual liberty-the individual's due process right not to be subject to extra-territorial jurisdiction unless he has a sufficient relationship with the state asserting jurisdiction. When, however, a federal court sitting pursuant to federal question jurisdiction exercises personal jurisdiction over a U.S. citizen or resident based on a congressionally authorized nationwide service of process provision, that individual liberty interest is not threatened. In such cases, the individual is not being subject to extra-territorial jurisdiction, because the individual is within the territory of the sovereign—the United States—exercising jurisdiction. In other words, when a federal court exercises jurisdiction pursuant to a national service of process provision, it is exercising jurisdiction for the territory of the United States and the individual liberty concern is whether the individual over which the court is exercising jurisdiction has sufficient minimum contacts with the United States.

*deSoto*, 245 at 567-68.

8

No. 12-CV-10230, 2012 WL 1666426, at *3 (E.D. Mich. May 11, 2012) (citing *Omni Capital Int'l v. Rudolf Wolff & Co.*, 484 U.S. 97, 108 (1987)).  Accordingly, the Court's analysis in this case must proceed as it would in a diversity case, assessing personal jurisdiction under both Michigan's long-arm statute and the Due Process Clause of the Fourteenth Amendment.  *See Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) ("Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant[] due process.'" (alterations in original) (quoting *Mich. Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992))).

**B.     Jurisdiction Under Michigan's Long-Arm Statute**

Michigan's long-arm statute provides for both "limited" jurisdiction over corporations pursuant to M.C.L. § 600.715 and "general" jurisdiction over corporations pursuant to M.C.L. § 600.711.[6]  For the purposes of this motion,

---

[6] As explained by the Sixth Circuit, "[l]imited jurisdiction extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect. General jurisdiction, on the other hand, enables a court in Michigan to exercise jurisdiction over a corporation regardless of whether the claim at issue

Plaintiff "seeks only to establish limited personal jurisdiction over [Defendant],"
Pl.'s Resp. to Def.'s Mot. to Dismiss, Dkt. # 10, at 9 n.5, and therefore the Court
considers only § 600.715 here.  That statute provides:

> The existence of any of the following relationships between a
> corporation or its agent and the state shall constitute a sufficient basis
> of jurisdiction to enable the courts of record of this state to exercise
> limited personal jurisdiction over such corporation and to enable such
> courts to render personal judgments against such corporation arising
> out of the act or acts which create any of the following relationships:
>
> (1) The transaction of any business within the state.
>
> (2) The doing or causing any act to be done, or consequences to occur,
> in the state resulting in an action for tort.
>
> (3) The ownership, use, or possession of any real or tangible personal
> property situated within the state.
>
> (4) Contracting to insure any person, property, or risk located within
> this state at the time of contracting.
>
> (5) Entering into a contract for services to be performed or for
> materials to be furnished in the state by the defendant.

M.C.L. § 600.715.

Plaintiff asserts that the Court need not consider § 600.715 because that
statute "[has] been construed to grant courts sitting in Michigan the broadest
possible scope of personal jurisdiction permitted by the Due Process Clause of the
Fourteenth Amendment" and thus "the analysis merges and the Court need only

---

is related to its activities in the state or has an in-state effect."  *Neogen*, 282 F.3d at
888 (citation omitted).

determine whether personal jurisdiction over the defendant exists under the Due Process Clause." Pl.'s Resp. to Def.'s Mot. to Dismiss, at 9 (quoting *CSX Transp., Inc. v. Union Tank Car Co.*, 247 F. Supp. 2d 833, 836 (E.D. Mich. 2002));. In making that statement, the court in *CSX Transportation* cited *Neighbors v. Penske Leasing, Inc*., 45 F. Supp. 2d 593, 597 (E.D. Mich. 1999), which in turn relied on *Sifers v. Horen*, 188 N.W.2d 623, (Mich. 1971), a Michigan Supreme Court case finding that M.C.L. § 600.705 -- Michigan's limited personal jurisdiction statute with regard to *individuals* -- extends to the farthest limits permitted by due process. *See* 188 N.W.2d at 623-24. And indeed, at least one unpublished Sixth Circuit opinion assessing § 600.715 has since cited *Sifers* in stating that "[t]he Michigan Supreme Court has construed Michigan's long-arm statutes to bestow the broadest possible grant of personal jurisdiction consistent with due process." *Walker Motorsport, Inc. v. Henry Motorsport, Inc.*, 110 F.3d 66 (6th Cir. 1997) (unpublished).[7] However, other, more recent, Sixth Circuit opinions have conducted separate personal jurisdiction analyses with regard to both the Due Process Clause and § 600.715, with no mention of any merger between the two analyses. *See, e.g.*, *Beydoun v. Wataniya Restaurants Holding, Q.S.C.*, 768 F.3d

---

[7] This conclusion is certainly not an unreasonable one, given that all five conditions sufficient to give rise to jurisdiction under § 600.715 are also sufficient under § 600.705, along with two other sufficient conditions that are present in § 600.705. *Compare* M.C.L. § 600.715 with M.C.L. § 600.705.

499, 504 (6th Cir. 2014); *Miller v. AXA Winterthur Ins. Co.*, 694 F.3d 675, 679 (6th Cir. 2012).  In short, the law in this area is somewhat unclear.[8]

But regardless of the exact relationship between § 600.715 and the Due Process Clause, § 600.715 has uniformly been interpreted to cast an extremely wide net.  For example, "the transaction of any business within the state" necessary to satisfy subsection (1) is established by "the slightest act of business in Michigan." *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988) (citing *Sifers*, 188 N.W.2d at 624 n.2); *see also Neogen*, 282 F.3d at 888.  "The word 'any' means just what it says. It includes 'each' and 'every' . . . It comprehends the 'slightest.'" *Lanier*, 843 F.2d at 906 (quoting *Sifers*, 188 N.W.2d at 624 n.2).  Here, Plaintiff alleges that Defendant made business transactions within Michigan that qualify under the statute.  Plaintiff claims that Defendant purchased property from Plaintiff in Michigan.  *See supra*, n.4.  Plaintiff has also presented a prima facie case that limited personal jurisdiction exists over Defendant under § 600.715(2), as Plaintiff alleges a tort action against defendant that had an adverse effect on Plaintiff in Michigan.  *See Neogen*, 282 F.3d at 888-89 ("[Plaintiff] has also presented a prima facie case that limited jurisdiction exists over [Defendant] under § 600.715(2), based upon [Plaintiff's] allegation that the

---

[8] From a practical perspective, it is admittedly difficult to imagine a case in which the Due Process Clause's requirements with regard to personal jurisdiction are satisfied and yet § 600.715 is not, as will be discussed below.

use of [Defendant's] website and tradename in dealing with its Michigan customers has caused an adverse economic effect upon [Plaintiff] in Michigan.").

Accordingly, the Court finds that, under Michigan's long-arm statute, limited personal jurisdiction is present over Defendant.[9]

## C.   Jurisdiction Under the Due Process Clause of the Fourteenth Amendment

The Due Process Clause of the Fourteenth Amendment limits the authority of a court to bind a nonresident defendant to its judgments.  In two recent cases, *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746 (2014) and *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115 (2014), the Supreme Court reaffirmed and further refined the personal jurisdictions requirements under the Due Process Clause that it has articulated for decades.  *Daimler* dealt with "general jurisdiction" -- jurisdiction that arises out of a defendant's continuous presence in a particular place.  *Daimler* reaffirmed the principle that a defendant may be subject to suit in any jurisdiction where it can be said to be "at home."  *Daimler*, 134 S. Ct. at 760. For a corporation, this could include places such as the state of incorporation or places in which a corporation conducts most of its business.  *See id.*; *see also*

---

[9] Because the Court finds that limited personal jurisdiction is present over Defendant, there is no need to determine whether the Court also has general jurisdiction over Defendant under M.C.L. § 600.711.

*Advanced Tactical Ordinance Sys., LLC, v. Real Action Paintball, Inc.*, 751 F.3d 796, 800 (7th Cir. 2014) (describing *Daimler*).   *Walden*, in contrast, dealt with "specific jurisdiction" -- jurisdiction that arises out of a defendant's activity in the forum state that is related to the suit itself.  *Walden*, 134 S. Ct. at 1121-24.  As the Court has stated for nearly three-quarters of a century, the Due Process Clause requires that a defendant have "certain minimum contacts" with the forum state such that the defendant being haled into court in the forum state does not offend "traditional notions of fair play and substantial justice."   *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)) (internal quotation marks omitted); *see also Walden*, 134 S. Ct. at 1121-24.  As with most specific jurisdiction cases since *International Shoe*, *Walden* further refined the Court's articulation of what type of conduct satisfies the "minimum contacts" test.

The parties primarily address specific jurisdiction in their briefs.   The Supreme Court doctrine regarding specific jurisdiction is well defined.  In order to determine whether a court has specific jurisdiction over a nonresident defendant, a court must "focus[] on the 'relationship among the defendant, the forum, and the litigation.'"   *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 775 (1984) (quoting *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977)).  This inquiry has long centered on the requirement that "in order to subject a defendant to a judgment in personam, if

14

he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316 (quoting *Milliken*, 311 U.S. at 463 (1940)).   This standard "is hardly a precise and definitive" one, *S. Mach. Co. v. Mohasco Indus., Inc.*, 401 F.2d 374, 381 (6th Cir. 1968), but numerous cases following *International Shoe* have provided further guideposts.   Minimum contacts exist when "the defendant's conduct and connection with the forum state are such that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen Corp., v. Woodson*, 444 U.S. 286, 297 (1980).  Further, it is necessary that the defendant "purposefully avail itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (quoting *Hanson v. Denckla*, 357 U.S. 235, 253 (1958)) (internal quotation mark omitted).  Most recently, the *Walden* Court emphasized two aspects of the minimum contacts test that are particularly relevant here.   "First, the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State," and not "contacts between the plaintiff (or third parties) and the forum State," no matter how substantial.  *Walden*, 134 S. Ct. at 1122 (quoting *Burger King*, 471 U.S. at 475).  "Second, [the] analysis looks to the defendant's contacts *with the forum State itself*, not the defendant's contacts with persons who

15

reside there." *Id.* (emphasis added).  Critically, this means that "the plaintiff cannot be the only link between the defendant and the forum." *Id.*

The Sixth Circuit has partitioned the minimum contacts analysis into a three-part test:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*S. Mach.*, 401 F.2d at 381.  Much of the analysis tends to focus on the purposeful availment prong, which the most complex part of the inquiry.  *See, e.g.*, *Neogen*, 282 F.3d at 890-92.  "'[P]urposeful availment' is something akin to a deliberate undertaking to do or cause an act or thing to be done in [the forum state] or conduct which can be properly regarded as a prime generating cause of the effects resulting in [the forum state], something more than a passive availment of [the forum state] opportunities."  *Id.* at 891 (quoting *Khalaf v. Bankers & Shippers Ins. Co.*, 273 N.W.2d 811, 819 (Mich. 1978)) (internal quotation marks omitted).  The connections between the defendant and the forum state must be "more than 'random, fortuitous, or attenuated.'" *Id.* at 892 (quoting *Burger King*, 471 U.S. at 475).

The Court, having carefully reviewed the record and the parties' briefs regarding jurisdiction, finds the record sufficiently opaque that jurisdictional discovery is required. Plaintiffs allege essentially three sets of putative connections between Defendant and Michigan: (1) Defendant's website, which contains information about its services and was viewable and usable by Michigan customers; (2) Defendant's interactions with Plaintiff, including its alleged copying of Plaintiff's intellectual property, its communications with Plaintiff related to the alleged copying, and its purchase of one of Plaintiff's products; and (3) Defendant's alleged sales to Michigan customers.

The record provides substantial information regarding the first set of connections, and the parties focus on Defendant's website extensively in their briefs. However, the record says very little about the second and third sets of putative connections, both of which are relevant to specific jurisdiction in this case. Plaintiff's theory of jurisdiction relies heavily on *Calder v. Jones*, 465 U.S. 783 (1984), in which the Supreme Court applied the minimum contacts analysis to a libel action and held that "a plaintiff can establish personal jurisdiction when it alleges that the defendant 'expressly aimed' tortious conduct at the forum in question and the 'brunt of the harm' is felt there." *Carrier Corp. v. Outokumpu Oyj*, 673 F.3d 430, 451 (6th Cir. 2012) (quoting *Calder*, 465 U.S. at 789); *see also Air Products & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 553 (6th Cir.

17

2007) (finding that a defendant's contacts with the forum state may be "enhanced by . . . conduct which, at least as alleged, was intentionally directed to cause harm to a [forum] resident").

Plaintiff's *Calder* argument, however, must be viewed in the context of *Walden*, which the parties did not substantially discuss in their briefs. *Walden* emphasized that, even in the intentional tort context, the relationship between the defendant and the forum state must arise out of contacts between the two that are created by the defendant -- a defendant's mere knowledge that an intentional tort directed at a plaintiff will lead to adverse effects in the forum state is not enough. *See* 134 S. Ct. at 1122. "A forum State's exercise of jurisdiction over an out-of-state intentional tortfeasor must be based on intentional conduct by the defendant that creates the necessary contacts with the forum." *Id. Walden* discussed *Calder* extensively, explaining the reasons why the libel tort in that case was "targeted" at the forum state:

> [In Calder,] the reputational injury caused by the defendants' story would not have occurred but for the fact that the defendants wrote an article for publication in California that was read by a large number of California citizens . . . . In this way, the "effects" caused by the defendants' article—i.e., the injury to the plaintiff's reputation in the estimation of the California public—connected the defendants' conduct to California, not just to a plaintiff who lived there. That connection, combined with the various facts that gave the article a California focus, sufficed to authorize the California court's exercise of jurisdiction.

*Id.* at 1124.

Here, the extent of Defendant's litigation-related connections with Michigan remains unclear -- the record does not indicate whether Defendant obtained the allegedly copied property through its purchase from Plaintiff in Michigan (which could potentially connect Defendant to the forum state) or through some other means, such as by visiting the State of Michigan website.  Further, the record does not indicate the extent of Defendant's current business in Michigan, which could be relevant to both specific and general jurisdiction.  As the record currently stands, the Court is unable to assess, for example, the extent to which Defendant competes with Plaintiff in Michigan for clients, which could potentially indicate some targeting of the tort at the forum.  *See, e.g.*, *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124, 1130 (9th Cir. 2010).  While Plaintiff alleges that Defendant's website at one point indicated that Defendant served clients in Michigan, the record provides no indication as to the extent, duration, and nature of those Michigan contacts.

Accordingly, the Court finds that limited jurisdictional discovery is necessary to determine whether the Court has personal jurisdiction over defendants in this matter.  The Court directs the parties to focus specifically on the issues described above, including (1) the way in which Defendant obtained the allegedly copied intellectual property, and (2) the extent and nature of Defendant's current and past business relationships in Michigan, especially as they relate to this

19

litigation.   Further, the Court orders the parties to submit supplemental briefing focusing on whether, under *Calder* and *Walden*, the Defendant's connections with Michigan (as ascertained through jurisdictional discovery) sufficiently evince that the alleged tort was "targeted" at the forum state.

## IV. CONCLUSION

For all of the foregoing reasons,

IT IS HEREBY ORDERED that Defendant's Motion to Dismiss for Lack of Personal Jurisdiction (Dkt. # 6) is **DENIED** without prejudice.  Defendant may renew the motion following the completion of jurisdictional discovery.

IT IS FURTHER ORDERED that the parties shall conduct limited discovery regarding personal jurisdiction.  Such discovery should be focused on (1) the nature in which Defendant obtained the allegedly copied intellectual property, and (2) the extent and nature of Defendant's current and past business relationships in Michigan.  Such discovery is authorized for a period of **no more than sixty (60) days** after entry of this order.

IT IS FURTHER ORDERED that the parties shall submit to the Court supplemental briefing as described in this opinion.  Such supplemental briefing shall be submitted **within sixty (60) days** of the entry of this order.

**IT IS SO ORDERED.**


Dated:  March 31, 2015                    s/Gerald E. Rosen_____
                                          Chief Judge, United States District Court

I hereby certify that a copy of the foregoing document was served upon the parties and/or counsel of record on March 31, 20155, by electronic and/or ordinary mail.

                        s/Julie Owens_____
                        Case Manager, (313) 234-5135

21